IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN VERONA, et al** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **U.S. BANCORP, et al** | : | **NO. 08-4104** |

GOLDBERG, J.                                                                                      February 23, 2009

### MEMORANDUM OPINION AND ORDER

This case involves claims raised by Plaintiff, Steven Verona, alleging that Defendants, U.S. Bancorp, Voyager Fleet Systems and K.E. Austin, reneged on various contractual obligations pertaining to a pre-purchase gasoline business started by Verona.

Before the Court is Defendant K.E. Austin's motion, pursuant to Federal Rule of Civil Procedure 12(b)(2), to either dismiss Plaintiffs' eight-count Complaint or transfer venue. In support of this Motion, K.E. Austin asserts that it lacks sufficient minimum contacts with Pennsylvania to subject them to personal jurisdiction in this forum.  As this Court agrees with K.E. Austin, this case is transferred to the United States District Court for the Eastern District of North Carolina.

### I. FACTS PERTINENT TO THE MOTION

According to the Complaint, Steven Verona, the founder and CEO of MyGallons, LLC and Zenacon, LLC, designed the MyGallons program:

> . . . to allow consumers to pre-purchase gasoline on the MyGallons website at current prices and have the gallons accrue in their MyGallons accounts. Consumers would be issued MyGallons cards, similar to debit cards.  They could then redeem their gallons in the future at any service station where the

1

> MyGallons card was accepted, without regard to the future price of gasoline, thus protecting themselves from rising gasoline prices.

(Complaint, ¶ 4). In order for his program to operate, Verona required access to a payment processing network that would allow for the MyGallons card to be accepted at service stations. To that end, he approached U.S. Bancorp in the spring of 2008 to negotiate a contract for use of the Voyager Fleet Systems network, which is accepted at approximately 95% of gas service stations across the country.[1] (Complaint, ¶ 5). According to Verona, he discussed his idea with officers from U.S. Bancorp and Voyager Fleet Systems and was directed to work with K.E. Austin, an authorized reseller of the Voyager network and a corporation located in North Carolina. (Complaint, ¶¶ 6-7).

On March 17, 2008, Verona, who was a Pennsylvania citizen at the time, visited K.E. Austin's website and completed an application found on that website. Verona filled out the application on behalf of Zenacon, LLC, and faxed it to K.E. Austin, in North Carolina. On the application, Verona listed his own Pennsylvania address, as well as a Pennsylvania address for Zenacon, which was an Ohio entity. (Verona Affidavit, ¶ 5; Dorroll Affidavit, ¶ 6).[2] After Verona completed the application, he claims that he communicated with K.E. Austin, "regularly and repeatedly both over the telephone and via e-mail, predominately from Pennsylvania." (Verona Affidavit, ¶ 6). During these communications, all of K.E. Austin's personnel were located in North Carolina. (Dorroll Affidavit, ¶ 8).

Thereafter, Verona informed K.E. Austin that he intended to change the contracting entity from Zenacon to MyGallons, LLC, located in Florida. (Verona Affidavit, ¶ 7; Dorroll Affidavit, ¶ 9). MyGallons, LLC was formed on April 14, 2008, and listed its registered

---

[1] The Voyager Fleet Systems network is a wholly owned subsidiary of U.S. Bancorp. (Complaint, ¶ 21).
[2] Phil Dorroll is the national fleet director for K.E. Austin.

2

agent as Brent Levinson, a Florida attorney. (Dorroll Affidavit, ¶ 12). On May 20, 2008, Verona submitted an application contract for MyGallons, LLC to K.E. Austin. Around the same time, Verona notified K.E. Austin that he was personally moving to Florida. (Verona Affidavit, ¶¶ 7, 9; Dorroll Affidavit, ¶ 14). Throughout this time, Verona claims he and K.E. Austin continued to work together on a pilot program and the MyGallons venture. (Verona Affidavit, ¶ 8; Dorroll Affidavit, ¶¶ 15-17).

MyGallons was launched to the public on June 30, 2008, but according to Verona:

> . . . despite having valid contracts in place with [K.E. Austin] for use of US Bank's Voyager network, shortly after MyGallons was launched with great fanfare, on or about July 1, 2008, US Bank refused to honor the contracts and agreements and denied MyGallons access to the Voyager network. Two days later, on July 3, 2008, US Bank falsely denied - to the press - that US Bank or Voyager had any relationship with MyGallons or Steven Verona.

(Complaint, ¶ 12).

Verona has alleged that the defendants' actions destroyed the company's launch. (Complaint, ¶¶ 13-15). Specifically, on August 22, 2008, Verona, along with MyGallons, LLC, and Zenacon, LLC, sued U.S. Bancorp, Voyager Fleet Systems, and K.E. Austin in the Eastern District of Pennsylvania alleging: breach of contract, promissory estoppel, tortious interference with existing and prospective contractual relations, defamation, disparagement, and false light. Defendants U.S. Bancorp and Voyager Fleet Systems filed their Answer on October 21, 2008, and K.E. Austin filed the Motion to Dismiss or Transfer Venue on October 30, 2008.

## II. DISCUSSION

K.E. Austin has moved for dismissal or transfer of the case based on a lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). When deciding a motion to dismiss for lack of personal jurisdiction, we must accept the allegations in the

3

complaint as true. Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). However, a 12(b)(2) motion, "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984). Once personal jurisdiction is challenged, the burden shifts to the plaintiff to establish that the district court has personal jurisdiction over the non-resident defendant. A plaintiff must satisfy this burden through the use of affidavits or other competent evidence. Id.

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1986) (citing Fed. R. Civ. P. 4(e)). Pennsylvania's long arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over non-residents to the "fullest extent allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). The due process clause of the United States Constitution permits personal jurisdiction so long as the non-resident defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be exercised under two distinct theories - general or specific. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). General jurisdiction is proper where a defendant's contacts with the forum state are "continuous and systematic" and exists whether or not the cause of action is related to a defendant's activities in Pennsylvania. Id. Specific jurisdiction exists only if the plaintiff's cause of action arises out of a defendant's forum related activities. Id. We address each of these concepts below.

4

A. General Jurisdiction

Some of the objective criteria a court may consider in determining whether general jurisdiction exists over a corporate defendant includes: (1) whether the defendant is incorporated or licensed to do business in Pennsylvania; (2) whether the defendant has ever filed any tax returns in the Commonwealth; (3) whether the defendant files administrative reports with any agency or department of Pennsylvania; (4) whether the defendant regularly purchases products or supplies within Pennsylvania for use in its business outside the state; (5) whether the defendant owns land or property within the state; (6) whether the defendant advertises in Pennsylvania; and (7) whether the defendant maintains an agent in the Commonwealth. Farina v. Nokia, 578 F.Supp.2d 740, 751 (E.D.Pa. 2008) (Padova, J.) (citing Gaylord v. Sheraton Ocean City Resort & Conference Center, 1993 WL 120299, *4 (E.D.Pa. 1993) (Hutton, J.)).

Here, Verona has failed to provide sufficient evidence establishing the above criteria. K.E. Austin is not incorporated or authorized to do business in this state, nor does it own property or have employees in Pennsylvania. (Dorroll Affidavit, ¶ 3). Furthermore, the advertisements on K.E. Austin's website, cited by Verona, are not specifically focused on Pennsylvania, but rather, target customers nationally and state that K.E. Austin serves "Customers in all 50 States." (Risen Declaration, Exhibits 2, 6).[3]  Further, Verona has failed to submit any evidence concerning K.E. Austin's tax filings, whether it files any administrative reports in Pennsylvania, or whether it purchases any products or supplies within the state. Considering the factors listed above, Defendant does not have continuous and systematic contacts with Pennsylvania.

---

[3] Douglas Risen is counsel for the plaintiffs. Risen's Declaration includes, *inter alia*, printouts from K.E. Austin's website and was filed in support of Verona's Response to the Motion to Dismiss.

5

Verona argues that there is general jurisdiction by virtue of the fact that 2.88% of K.E. Austin's nationwide revenues are derived from Pennsylvania. (Verona's Response, p. 9). This fact is not persuasive because the Third Circuit has stated that, "the size of the percentage of [a defendant's] total business represented by its Pennsylvania contacts is generally irrelevant," for determining personal jurisdiction. Provident, 819 F.2d at 437-438. Other cases from this district, which have examined the percentage of a defendant's revenue, have found that revenues generated in Pennsylvania, similar to K.E. Austin's 2.88%, were insufficient to support personal jurisdiction. See Simplicity, Inc. v. MTS Products, Inc., 2006 WL 924993, *4 (E.D. Pa. 2006) (Sanchez, J.) (of defendant's total business, the 1.5% revenue generated in Pennsylvania, "falls substantially below the 'continuous and systematic' contacts required"); Romann v. Geissenberger Mfg. Corp., 865 F. Supp. 255, 261 (E.D. Pa. 1994) (Joyner, J.) (of defendant's total sales, the 2-4% that occurred in Pennsylvania was insufficient to establish personal jurisdiction even though defendant was also registered to do business in Pennsylvania).

In short, precedent cited above instructs that in examining general personal jurisdiction, the overall nature of a business's activity is a more reliable indicator of "continuous and systematic" contacts, than focusing on a small percentage of revenue generated from that particular state. See Provident, 819 F.2d at 437-438. Because Verona has not provided any persuasive evidence regarding the nature of Defendant's activity in Pennsylvania, other than a small revenue stream, this Court does not have general personal jurisdiction over K.E. Austin.

B. <u>Specific Jurisdiction</u>

Specific jurisdiction arises from a defendant's activities in the forum state that relate to the particular cause of action being litigated. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-473 (1985). A court can properly exercise specific jurisdiction when the defendant has purposefully established "minimum contacts" with the forum state such that he could reasonably anticipate being haled into court there. <u>Id.</u> at 474. A single contact can support jurisdiction only if it creates a substantial connection with the forum. <u>Id.</u> at 476 n.18.

Verona argues that this Court has specific jurisdiction based on K.E. Austin's website. He claims that K.E. Austin has purposefully directed activities at this forum and thus, could reasonably anticipate being haled into court here because prospective customers from Pennsylvania were able to download and execute applications from the website. (Plaintiffs' Brief in Opposition, p. 11).

In support of this argument, Verona cites <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997), which held that a website can serve as a basis for personal jurisdiction when a defendant enters into contracts through the website and generally conducts business over the Internet. <u>Id.</u> at 1124. Jurisdiction may also be exercised where a commercially interactive website allows a user to exchange information with a host computer. However jurisdiction is not proper where a website serves only to make information available. <u>Id.</u>

Here, K.E. Austin's website is not sufficient to establish personal jurisdiction because no business or contracts were transacted via the website.[4] K.E. Austin's website

---

[4] In Count I of the Complaint, Verona alleges that the defendants breached the "May 20, 2008 application contract, the Confidentiality Agreements, and the June 27, 2008 Rebate Agreement." (Complaint, ¶ 81). The Complaint does not allege that any of these contracts, or any others, were executed via K.E. Austin's

7

was not interactive, and, in fact, Verona only accessed it to obtain the application contract. Thereafter, all further negotiations took place by phone and email.

In Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003), the Third Circuit discussed a website's interactivity as a basis for personal jurisdiction. The Court emphasized that a commercially interactive website does not subject a defendant to jurisdiction unless, "there [is] evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." Id. at 454. In the instant case, Verona has not provided any evidence that K.E. Austin's website targeted Pennsylvania. In fact, Verona relies solely on the fact that the website advertises itself nationally, as "Serving Customers in all 50 States." (Plaintiffs' Brief in Opposition, p. 11). This evidence is inadequate to maintain jurisdiction with this Court.

Verona also points to the e-mails and telephone communications initiated by K.E. Austin and directed toward Verona while he was located in Pennsylvania as evidence of purposeful availment. Verona cites Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476 (3d Cir. 1993), for the proposition that "mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." Id. at 482. While K.E. Austin and Verona apparently did communicate while Verona was located in Pennsylvania, we are unpersuaded, for several reasons, that this justifies jurisdiction.

First, it was Verona who initiated the contact between himself and K.E. Austin, when he accessed the K.E. Austin website and located the application contract. (Verona

website. (Complaint, See generally).

8

Affidavit, ¶ 5; Dorroll Affidavit, ¶ 6). Second, at some point during the negotiation process, Verona relocated to Florida and informed K.E. Austin that he intended the MyGallons program to function through a Florida entity. (Verona Affidavit, ¶¶ 7, 9; Dorroll Affidavit, ¶¶ 9, 10). Thus, K.E. Austin directed no activities to Pennsylvania until after Verona had initiated the contacts. Thereafter, these contacts occurred with the understanding that Verona's operations would be moving out of state. We, therefore, find that K.E. Austin did not have minimum contacts such that they could reasonably anticipate being haled into court in Pennsylvania, and thus, this Court lacks specific personal jurisdiction over Defendant.

      C. <u>Transfer to the Eastern District of North Carolina</u>

As an alternative to dismissing the Complaint against K.E. Austin for lack of personal jurisdiction, this Court may transfer venue pursuant to 28 U.S.C. § 1631[5], which states:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. In short, this statute authorizes transfer to another district 1) where plaintiff's claim could have been brought originally, and 2) where that transfer would be in the interest of justice. <u>Gaglioti v. International Cosmetic Laboratories</u>, 1993 WL 492801,

---

[5] This Court may also have authority to transfer this case pursuant to 28 U.S.C. § 1406(a). That statute authorizes such a transfer, even where personal jurisdiction is lacking, when venue is improper. <u>See Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 466 (1962). The parties have not, however, provided this Court with sufficient evidence to determine whether venue is improper in the Eastern District of Pennsylvania.

9

at *5 (E.D.Pa. 1993) (Dubois, J.) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (1988)).

The claims at issue here could have originally been brought in the Eastern District of North Carolina, as that jurisdiction possesses personal jurisdiction over K.E. Austin, a North Carolina company with its principal place of business in Wilmington, North Carolina. The North Carolina District Court also possesses subject matter jurisdiction based upon diversity of citizenship. Venue would also be proper as to the claims against K.E. Austin based on the general venue statute, 28 U.S.C. § 1391(a).

Further, it is in the interest of justice to transfer the case to the Eastern District of North Carolina. "Normally transfer will be in the interest of justice because [ ] dismissal of an action that could be brought elsewhere is 'time consuming and justice-defeating.'" Lawman Armor Corp. v. Simon, 319 F.Supp.2d 499, 507 (E.D. Pa. 2004) (Dubois, J.) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)). If the claims against K.E. Austin were dismissed for lack of personal jurisdiction, Verona would be forced to re-file in another district. Consequently, rather than dismissing the claims against K.E. Austin, it is in the interest of justice to transfer them to the Eastern District of North Carolina.[6]

Although this Court's jurisdiction over defendants, U.S. Bancorp and Voyager Fleet Systems, has not been challenged, we conclude that the claims against these defendants should be transferred to the Eastern District of North Carlina, pursuant to 28 U.S.C. § 1404(a). This section states:

> For convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

---

[6] We note that Verona has argued that if this Court determines that it has no personal jurisdiction over K.E. Austin, then the case should be transferred to the Eastern District of North Carolina, as opposed to being dismissed. (Verona's Response, p. 14).

10

28 U.S.C. § 1404(a).

Because the claims against K.E. Austin are being transferred to another district, keeping together all of Verona's claims would avoid wasting the time, energy, and money of litigating two separate cases based on the same set of facts. Indeed, Defendants U.S. Bancorp and Voyager have agreed to the case being transferred to the Eastern District of North Carolina. (K.E. Austin's Motion to Dismiss, Exhibit A). See Gaglioti, 1993 WL 492801, at *5-*6 (transferring plaintiff's claims against three defendants to the District of New Jersey in the interest of justice under § 1404(a) after the court had transferred plaintiff's claims against a fourth defendant to that district due to a lack of personal jurisdiction pursuant to § 1631).

## III. **CONCLUSION**

For the foregoing reasons, this Court concludes that it does not have personal jurisdiction over Defendant K.E. Austin. This case is transferred to the United States District Court for the Eastern District of North Carolina. Our Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN VERONA, et al** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **U.S. BANCORP, et al** | : | **NO. 08-4104** |

## ORDER

**AND NOW**, this 23rd day of February, 2009, upon consideration of Defendant K.E. Austin Corporation's Motion to Dismiss Plaintiffs' Complaint or in the Alternative to Transfer Venue, Plaintiffs' response in opposition, Defendant's Reply Brief, the supporting affidavits, and after oral argument, it is hereby **ORDERED** that Defendant's Motion to Dismiss (Doc. # 25) is **DENIED**. It is further **ORDERED** that Defendant's alternative motion to transfer venue is **GRANTED** and the case is **TRANSFERRED** to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §§1631 and 1404(a) in the interest of justice.[1]

BY THE COURT:

/s/ Mitchell S. Goldberg
_____
**Mitchell S. Goldberg, J.**

---

[1] Although not parties to this Motion, Defendants U.S. Bancorp and Voyager Fleet Systems have agreed to have the claims against them transferred to the Eastern District of North Carolina, along with the claims against Defendant K.E. Austin.